THE STATE EX REL. BURNETT COUNTY vs. HARSHAW, State Treasurer.

*December 5 — December 22, 1888.*

*Counties: Division: Apportionment of debt: Subrogation.*

By ch. 155, Laws of 1878, and ch. 197, Laws of 1879, Burnett county was authorized to borrow from the trust funds of the state, $20,000, to be used in aiding the construction of a railroad, and to be repaid, with interest, in fifteen annual instalments. Until the whole

amount should be repaid the railroad company was required to pay annually into the state treasury, in lieu of all license fees, a sum equal to five per cent. of its gross earnings, which sum was to be applied upon the indebtedness of the county. By ch. 172, Laws of 1883, Washburn county was formed out of part of the territory of Burnett, and, pursuant to that act, the existing debt was apportioned, and new certificates of indebtedness issued to the state by the respective counties. No provision was made by the act for the application of the sums paid into the treasury by the railroad. *Held*, that such sums should be applied upon the certificates of the two counties, ratably and in proportion to the amount of the indebtedness assumed by each.

MANDAMUS to compel the state treasurer to apply certain moneys paid into the state treasury by the St. Cloud, Grantsburg & Ashland Railway Company, upon the certificate of indebtedness issued by the relator pursuant to sec. 9, ch. 172, Laws of 1883. The respondent moved to quash the alternative writ. It appearing that *Washburn* county might be or become interested in the application of said moneys, the relator was required to notify said county and make it a party to the proceedings. Said county of *Washburn* thereupon appeared and filed an answer or return to the alternative writ, to which return a demurrer was interposed. Other facts are stated in the opinion.

For the relator there was a brief by *I. Grettum* and *I. C. Sloan,* and oral argument by *Mr. Sloan.* They contended that on the erection of a new county from territory of an old one the legislature may apportion the existing debts as it thinks proper, and the legislative discretion is not subject to judicial revision. *Depere v. Bellevue,* 31 Wis. 120; *Laramie Co. v. Albany Co.* 92 U. S. 307–315; *Mt. Pleasant v. Beckwith,* 100 id. 514; Dillon on Mun. Corp. sec. 187. It is clear from the language of sec. 9, ch. 172, Laws of 1883, that the intention was to have *Washburn* county borrow from any source the money necessary to pay the part of the debt apportioned to it, leaving *Burnett* county to pay the residue and to have the benefit of the five per cent. to be

paid by the railway company. The railroad is wholly within *Burnett* county, and no part of it in *Washburn.*

For the respondent the cause was submitted on the brief of *L. K. Luse,* Assistant Attorney General.

COLE, C. J. The motion to quash the alternative writ, and the demurrer to the return made by *Washburn* county, involve substantially the same questions of law, and were argued together. Both the motion and the demurrer can therefore be conveniently disposed of in one opinion. The facts upon which the questions of law arise are these, in brief:

By ch. 155, Laws of 1878, and ch. 197, Laws of 1879, the commissioners of the school and university lands were authorized to loan, and the board of supervisors of *Burnett* county was authorized to borrow, from the trust funds of the state, $20,000, to be used in aiding the construction of a certain railroad. The county executed to the state certificates of indebtedness bearing interest at the rate of seven per cent., the interest and one fifteenth of the principal to be paid annually until the whole loan was paid. In consideration of the use of this money for the purpose named, the railroad company was required to make report of its 'gross earnings for each preceding year, and to pay into the state treasury, at the time named, for fifteen years, a sum equal to five per cent. of such gross earnings, which was in lieu of all license fees; and it was made the duty of the state treasurer, upon the receipt of said five per cent. each year, to at once indorse the amount upon the certificates of the county, so long as any certificate should remain unpaid. When the loan made by the commissioners was fully paid and discharged, the railroad company was required to pay to the state the amount exacted from other railroad companies for license fees.

By ch. 172, Laws of 1883, the legislature divided the

county of *Burnett*, and organized the county of *Washburn* from territory theretofore embraced in the former county. By the ninth section of the act it was provided that each county should be the absolute owner of all county property situated within its boundaries. The indebtedness of *Burnett* county was to be apportioned between the two counties according to the assessed valuation of property at the last assessment. Provision was made for the collection and return of the taxes of 1883. The law authorized the new county of *Washburn* and *Burnett*, after the former indebtedness of *Burnett* had been apportioned, to borrow from the trust funds of the state, on terms satisfactory to the commissioners, sufficient money to take up and cancel the indebtedness of *Burnett* county to the state, and each county gave the state its certificate of indebtedness for the amount thus borrowed.

It appears that on the settlement and adjustment of the indebtedness of *Burnett* county by the officers of the two counties the sum of $4,139.45 was apportioned to *Burnett* county, and $10,774.01 was apportioned to *Washburn* county on the basis of settlement. There has been paid into the state treasury by the railroad company, pursuant to the acts above referred to, the sum of $1,061.02. The point in controversy is, Should *Burnett* county be credited that entire sum on its indebtedness to the state, or should it be applied on the certificates of each county ratably, according to its indebtedness? *Washburn* county insists and claims that upon the facts it is entitled to its proportionate share of the amount, and the question is, Is this contention right?

It would certainly seem but just and equitable to apportion the amount between the two counties according to the portion of the debt which each assumed and became liable to pay on the settlement between them. This five per cent. of the gross earnings paid by the railroad company into

the state treasury was manifestly intended to aid *Burnett* county in paying its debt to the state. This fund was in the nature of a security provided for the benefit of that county. There can be no doubt, we think, of the correctness of this proposition, in view of the legislation upon the subject. The county had originally made the loan from the state, presumably for the benefit of the railroad company, and by the arrangement the company was to aid in discharging this debt. Now, on the division, both counties have become liable for the payment of the debt to the state, or of certain portions of it. Why, then, should not each have the benefit of this railroad fund in the proportion which each has assumed to pay? It is a familiar doctrine in equity that a person secondarily liable for a debt which he has paid is substituted to the place of the creditor, and is entitled to the benefit of all the securities possessed by the creditor, and may make use of all remedies to enforce them as the creditor himself could do. This is subrogation, or the substitution of one person in place of another as creditor. The principle may well be applied here for the benefit of *Washburn* county. To make the matter still more plain, suppose the railroad company had given a mortgage for the benefit of *Burnett* county and to aid that county in paying its debt to the state. Can there be a doubt that on the division of the debt between the two counties the security would pass so that each county would be entitled to its proportionate share of it? It seems to us perfectly clear that a court would give each county the benefit of the security in the case supposed; and if we regard the railroad fund in the nature of a security, as we must do, the case stands upon the same footing precisely as though a mortgage had been originally given by the railroad company.

The learned counsel for the relator says: " The law is well settled that on the organization of a new county out

of the territory of the old one, in the absence of a provision apportioning the existing debts between the two, the old county remains liable for all the debts at the time of the division." This is doubtless a correct statement of the law as to the division of towns and counties. The legislature, however, in the present case, saw fit to apportion the existing debt of *Burnett* county between it and the new county, and determined the portion which each should pay. The indebtedness was to be apportioned between the two counties according to the assessed valuation of property at the assessment of 1882. There can be no doubt but *Washburn* county was bound and became liable on the division to pay its share of the debt which *Burnett* county owed the state. It has assumed the obligation, and now seeks to have its equitable share of a common fund which is in the nature of a security for that debt. Its claim rests upon reasonable and equitable grounds. It is true, the legislature did not expressly provide that the new county should have the benefit of this five per cent. fund paid by the railroad company into the state treasury, but it is a fair and legitimate inference, from the legislation considered together, that such was the intention; for the railroad company is required to make payment of five per cent. of its gross earnings for the preceding year, so long as any bond or certificate of indebtedness remains unpaid. The substituted bonds or certificates given by the two counties under the law of 1883, take the place of the certificates originally given by *Burnett* county. Now, it is apparent, if the contention of the relator's counsel is sound, that the portion of the debt to the state assumed by *Burnett* county may be paid long before the new county has discharged its portion of the debt. So, according to this view, the railroad company would be relieved from paying this five per cent. of its gross earnings, though a considerable portion of the debt assumed by *Washburn* county had not been discharged. We are con-

fident the legislature did not contemplate such a result, and that to so hold would be doing violence to the intent and spirit of the various acts passed upon this subject. It is perfectly plain the legislature intended the railroad company should pay five per cent. of its gross earnings into the state treasury each year, so long as any certificate or bond executed to the state by either *Burnett* or *Washburn* county remained unpaid; and it is the duty of the state treasurer, under these laws, to apply this fund ratably, and in proportion to the amount each county has assumed and become liable to pay upon its certificate or bond, until the entire debt of the state is paid.

It follows from these views that the motion to quash the alternative writ is granted, and the demurrer to the return of *Washburn* county is overruled.

*By the Court.*— Ordered accordingly.